Good morning, your honors. My name is David Landry. I represent the petitioner Cuauhtemoc Osorio-Gonzalez. I'm reserving two minutes for rebuttal. All right, I'll try to help you out, but please keep your eye on the clock as well. Thank you very much. Mr. Landry, what have you got to establish in order to win this case? That's a great question. I believe, based on the standard here, that you've got to show that the removal proceedings were fundamentally unfair, number one, and number two, that your client suffered prejudice as a result. That's what you've got to prove to me, or show to me, in order to win today. Now, you disagree with that? No, I think that's accurate, your honor. So if that's so, given that your client refused to sign his application to certify that was true and refused to testify, even though he was offered safeguards and accommodations, which safeguards and accommodations are outlined in matter of ma'am, I'm trying to figure out how one can say this was unfair. Well, your honor, imagine a moment when you're asked questions in a language you don't understand. Now, just a minute. He made an application. Yes. How did he make the application? With my office's assistance. Yeah. So he drafted this declaration. It was through an interpreter? Yes. And he had all this in front of him, and he refused to sign? Your honor, I had a lot of reservations, as his representative, as to whether or not the information contained in that I-589 application was complete. Well, whether it was complete or not, was it untrue? Also, your honor. I mean, the bottom line is, when you were going to show to me this fundamentally unfair, we gave, the government gave your client the chance to file this declaration, to file the application, to sign it, to do everything that your client wanted to do, and then he's coming in here saying it was untrue. Gave him a chance to testify. He wouldn't do it. Then your client comes and says, this is unfair. I'm having a tough time seeing how it's unfair. Well, your honor, when the respondent came to my office, he and I both assumed, based upon our conversations through our Spanish language interpreter, that he was fluent in Spanish and that he was able to answer many of the very basic questions contained in the application. It only became evident through my office and through my interpreter that his grammar, his vocabulary actually was very limited in Spanish. And what we learned was that by getting other, trying to get other interpreters in, you may note that we took his case or his situation to a linguist expert at UCSD, Dr. Haviland, who knows about this language, he understands the variances on it, and... Counsel, this case raises an interesting question of what to do if an interpreter in that particular dialect or in any petitioner's dialect really isn't available at all, which apparently was the case in this matter for years. But I think on this particular record, if I recall correctly, he has had six years of schooling exclusively in the Spanish language, right? And you can correct me if I am misrecalling the record. And his spouse speaks only Spanish. So he's been in other contexts where he's had to use Spanish exclusively. So under those circumstances, tell me why the safeguards offered aren't enough. So it may be that he may struggle with a question or two, but that's what the safeguards are all about. The questions can be repeated, they can be simplified, and he didn't take advantage of that opportunity to lay out his case with those safeguards in place. So how do you respond to that? Well, Your Honor, first I would say that Mom, Ma'am, really puts way too much confidence in what the immigration judge is going to do at that level. I don't think the safeguards are sufficient under these circumstances. Are you challenging them?  I didn't find that anyplace. Well, Your Honor, really from our perspective, this comes down to due process versus... Well, see, really, I'm trying to figure out what I'd like you to answer her question because it was very important. But you waived any challenge to the denial of asylum. You waived any challenges to withholding a removal. You waived any challenges to cat relief on the merits. All of those were waived. That's an AR-5. So here we are. That's why I thought my good colleague's question was pretty good. And you had to answer. I mean, you came... He came to a hearing on 9-26-13 and confirmed he was almost fluent in Spanish. He said he understood the Spanish language interpreter at the hearing. He came to a hearing on 1-23-14 and said he understood the Spanish language interpreter at the hearing. The first time where he says, no, I'm not going to do anything more is not until 11-20-2018. And she lays out pretty well what I have about what he knew about Spanish. I mean, this is why this seems to be the wrong case for doing what you want to do based on what you've done underneath. Well, you may be the wrong case. But for the petitioner himself, like I said, his understanding of what his command of the Spanish language was grossly incorrect. Right. But the problem is he didn't testify. I think it would be a different record if he had really struggled in the language for him to testify for the accommodations or the proceedings because he didn't understand that question or he really misunderstood that question. Then we have something to review. But what's funny about this case is we don't have that sort of record. So what we do have is the record of his relative fluency in the Spanish language, albeit you put in evidence that it wasn't as fluent as you're comfortable with. But we don't have a record of how he actually struggled without his attempt to at least testify at the hearing. Right? True. That's correct. Factually correct, Your Honor. I think the right course in this case would be to remand the case again to see if the Immigration Court can produce a proper interpreter. I do think that... The counsel, he had five years, did he not, of postponement to try to find such an interpreter? What you're really asking for is an indefinite suspension of proceedings because if there wasn't anyone available in five or six years, what is there to suggest that there will ever be someone? Well, Your Honor, first I think that's... We don't know that. That's sort of fatalistic. And I do think that it's also... We should not be presuming that the petitioner somehow someway became more fluent in Spanish because he's been living in the United States and has people that he's around that speak Spanish. Old dog being taught new tricks kind of situation. We don't all process new information that quickly. And I understand your concern, but I do think that we have to make a decision as to whether or not due process is more important than the prompt resolution or even resolution of some of these cases. The petitioner's case is a very, very unique case. This type of situation doesn't come up very often. In fact, most of my clients speak Conjabal, which is a Mayan dialect. It's very difficult to find interpreters for that, too. But they were eventually available. And I think the same thing could happen with this petitioner, that on remand we may be able to find the right interpreter. Let me ask you a couple of legal questions because I'm struggling with your legal case here. If it's your position that Josario Gonzalez can't sign his application without a proper translator, why should I consider the signed declaration that he can't speak Spanish fluently? I agree with you, Your Honor. I mean, he signed that, and that's what you're saying is the basis for your application. Well, they're both... What you're really saying is, I can't sign one, but I signed the other, so I'm supposed to buy it? I mean, that's the problem I have. Then I don't find any case for the position that you don't have to verify an asylum application or testify. I find no case for that. You have to sign. You have to testify. What you do when you testify, as Judge Wynn has outlined, makes it such that we can deal with it, but I can't find any case that says that you don't have to verify the application and you don't have to testify, so that we don't have any record upon which to make this determination. I would read GRAVA to suggest that we could. You would read which? GRAVA, GRAVA B-I-N-S, yes. I don't think so, but okay. Okay, if you could reconsider that, Your Honor, I think it can. And something else to keep in mind, too, technically the petitioner did sign the application. There are two parts of the application to be signed. He signed on page 9. All right, counsel. Our questions actually took you over your time, but I know you wanted to save some, so I'll give you a minute back. Okay. Let's hear from the government. Good morning, Your Honors, and may it please the Court. Stephanie Groff for the Attorney General. Your Honors, this Court should deny the petition for review and can do so on a very narrow issue presented by the facts. And first, let me just state that remand here would be inappropriate. First, there is no error by the immigration judge that would warrant remand, and remand for the attempt to, again, find a Chinoteco interpreter who speaks the National Valley dialect, a unique dialect. Let me ask you this, counsel, and forgive my ignorance. I just don't know how often this happens where you just can't find an interpreter. Anywhere in the country, presumably an interpreter could call in to a hearing, right, and provide the interpretation. Do you have a sense as to how often this occurs? Well, I don't have specific numbers or a sense. This does come up very rarely. The government does have government translators and interpreters, and they also have contracts with various companies. Here, by the record, you can see that the immigration judge did what he could to attempt to find an interpreter. And while it wasn't necessarily addressed in the briefs, if you look to the immigration court practice manual, it lays out what immigration judges are supposed to do in this situation. And if a limited English proficiency respondent wants an interpreter, they need to ask for it. And it specifically states that they need to list what dialect, where this region is spoken, how many people speak it, and importantly, alternatively, any other languages that a respondent is fluent in or comfortable. And here, that's exactly what the immigration judge did. The immigration judge did provide a lot of process for this petitioner. He continued the case. He had it administratively closed for counsel to find this interpreter, for the court to potentially find one. But after four years and five years total, there was none available. In fact, I will note that back in 2014, the immigration judge did state that there was a Chinoteco interpreter, but it was a dialect that was not the National Valley one. So Mr. Osorio's counsel said that that would not be proper. Now, as Judge Smith... In immigration proceedings, are uncertified interpreters permitted to assist petitioners? No, they need to be certified and swear to the truths of it. There is a process to become a certified interpreter with the contracting facilities. And the immigration judge here, the record shows that he asked counsel if they know any interpreter, that if they've used any interpreter. And the record shows that it's unclear if they ever used a Chinoteco National Valley interpreter for the application he did prepare. And that's because the record supports the contention that Mr. Osorio does speak Spanish. As you mentioned, Your Honor, he attended elementary and secondary school in Spanish. He has lived in the has a common-law wife that he speaks Spanish with. In fact, the evidence of Professor Harvillard stated that Mr. Osorio is actually quite fluent in Spanish when he spoke to him in 2018. And notably, it's important, this professor stated he does not speak Chinoteco. He does not speak National Valley dialect. He only speaks, he only spoke Spanish to Mr. Osorio. And in that declaration listed the same set of facts that we've seen throughout these proceedings. And there is no due process violation here. Importantly, with a due process violation, the first aspect is, were proceedings fundamentally unfair? And as Justice Smith stated, it is hard to see that there is anything that is fundamentally unfair here. And There is no justice in the Ninth Circuit, Ms. Judge. Sorry, Your Honor. Sorry. But importantly, as both Your Honors have mentioned, there is no record here. The immigration judge provided the opportunity to testify in the Spanish language with appropriate safeguards. But the Mr. Osorio refused to testify and importantly, refused to swear to the truth. This court has held in Grava and importantly in Oshodi v. Holder that at minimum, a non-citizen needs to swear to the truth of his or her application before going forward. Grava allows a non-citizen to swear to the truth and if necessary, to then proceed based on the application. But the and we talk about instead the prejudice prong, doesn't the fact that they waive the challenge to the denial of asylum, waive the challenge to the withholding of removal, and waive the challenge of cat relief, effectively say that prong cannot be met? Absolutely, Your Honor. And this court can deny this case that there is no fundamentally unfairness, but even if assuming and to jump to the prejudice prong, you are correct that there is no prejudice demonstrated. Especially for asylum, there was a one-year bar and the immigration judge found that he was outside of this one year and as you mentioned before the board and this court, he has waived any challenge to it and therefore cannot raise it today. For withholding and cat protection, he waived the merits, the alternative merits, but importantly, the judge denied his case because he could not even swear to the truth of it. And based on that, there is, this court can uphold that and find that there's no prejudice. Also, he's unable to show any prejudice that by speaking in the Spanish language that there was misinterpretation because he never attempted to testify. The immigration judge stated that under MAM, he'd be willing to have the interpreter go slow, to reinterpret any words, and if that were to happen and we were before this court, we would ask that this court deny the petition for review. Thank you. I promise to give you a minute. So, put a minute on the clock. Thank you, Your Honor. First, we would put forth to court, I understand your position, but I don't think we have a chance to do that. I think the best chance was that when I don't — Wait a minute. If you look at AR-5, which is the record here that I have to look at, there's no question that you waived the challenge. You're talking about in the brief? Yeah. Right. Well, that puts the defense attorney at a Hobson's choice, Your Honor, because if I don't know exactly what the underlying facts really are, how is it that I can argue on appeal that those facts would support the claim? I'm in a Hobson's position. So the only thing from my perspective that I could argue was the due process. Now, and I understand the court's position on it, and I respect it, but the petitioner needs to be able to express himself to the court, to the immigration judge, and that was not going to happen under these circumstances. But when you have outlined that an application needs to be made and an application needs to be signed and you need to testify and you have this situation which you're now describing, don't you think it's a better idea to do the best you can with the application, to give the best testimony that you can, and then make the argument that you at least there's something to look at, at least there's something to weigh, at least there's something for somebody to give some thought to? If you say nothing, which is what's happened here, at that point we have no way to say that you're wrong. In fact, the only affidavit we have that he can't speak Spanish is his, and he signs it, but he won't sign the affidavit, the very application that we've got to look at, saying he can't speak Spanish. So it's just, I'm just trying to point out the many things that I look at here which make it hard for me to help your client, which I'm not against him, I'm just trying to weigh the law as it is against what he did in this situation. Well, Your Honor, at that moment in 2018, all of the things that you proposed were not really on the table for us at that time. We were looking at a circumstance where the judge felt compelled to move forward under... Well, after all that time, it seems to me I'd be compelled if I'd been that judge. He gave all kinds of time to make this change, to help you out. Well, actually, Your Honor, the original judge administratively closed the case, and the ruling was, we're not going to reopen this until we get the right interpreter. Right. And yet, it got reopened without the right interpreter. Thank you very much, counsel, to both sides for your argument today. The matter is submitted, and we'll issue a decision in this case in due course. The next case, Cortez-Renoso v. Garland, has been submitted on the briefs and record.
judges: GRABER, SMITH, NGUYEN